UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS KING, | ) | CASE NO. 1:11cv1550 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & |
| JOHN GUZIK, et al, | ) | ORDER |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

*Pro se* plaintiff Dennis King ("plaintiff" or "King") filed this action under 42 U.S.C. §§ 1983 and 1985 against City of Lakewood, Ohio ("Lakewood") Police Detectives John Guzik ("Guzik"), Terry Miller ("Miller"), and Kappa; Lakewood Police Lieutenant Ciresi ("Ciresi"); and Lakewood Police Officers Gennaro Romanello ("Romanello") and Leanza.[1] In the complaint, plaintiff alleges the deprivation of his constitutional rights arising out of defendants' investigatory stop of his vehicle and failure to provide plaintiff with proper medical care after his arrest. He seeks declaratory, injunctive and monetary relief.

**I.   BACKGROUND**

On July 28, 2009, defendants Guzik and Miller left the Lakewood Police Station in a Detective Bureau Vehicle and headed westbound on Detroit Avenue. As the officers approached Clarence Avenue, Detective Guzik observed a black Cadillac driven by King cross over Detroit Avenue and proceed northbound on Clarence Avenue. Guzik observed that the driver was an African-American male who allegedly matched a confidential source's description of an individual suspected of drug activity in the area.[2]

---

[1] Plaintiff does not include the first names of defendants Kappa, Ciresi and Leanza in his complaint.

[2] In reviewing plaintiff's complaint, this Court takes judicial notice of the record in the underlying criminal case of

Guzik observed King park his Cadillac on the east curb of Clarence Avenue. King exited the vehicle, walked down the street, and entered an apartment building. Sometime later, he exited the apartment building and got back into the Cadillac. According to King, defendants have admitted that, at this point, King had not violated any traffic or criminal laws. Nevertheless, Detective Guzik called Lieutenant Ciresi "to design a premeditated plan to set up a false probable cause stop" of plaintiff's vehicle. (Compl. ¶ 15.) In response to Guzik's call, Lieutenant Ciresi summoned Officer Romanello to the area.

King's vehicle subsequently pulled away from the curb, traveled southbound on Clarence, and turned onto Detroit Avenue. Officer Romanello followed King. Lieutenant Ciresi's vehicle followed behind Romanello, and Detectives Guzik and Miller were last in the line of vehicles following King. When King approached the intersection of Detroit Avenue and West 117th Street near the city's eastern boundary, Lieutenant Ciresi instructed Romanello to initiate a traffic stop of King's vehicle.

King alleges that defendants "agreed with each other to design a false probable cause . . . and informed the plaintiff that he was being stopped and detained based on a hit/skip violation." (Compl. ¶ 17.) King alleges this was a lie and a pretext for stopping his vehicle.[3] Romanello approached King's car, advised him about the alleged "hit/skip," obtained his driver's license, and asked some basic questions about his travels. Romanello then took King's driver's

---

*United States v. King*, Case No. 1:09CR368 (N.D. Ohio). This is necessary in order to determine whether plaintiff's claims are cognizable in light of the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), discussed *infra*. Moreover, as plaintiff refers in his complaint to federal criminal proceedings in this Court relating to the above incident, this Opinion will draw the facts from both the Complaint and Orders issued in plaintiff's criminal case.

[3] In a suppression hearing conducted in plaintiff's criminal case, Romanello acknowledged on cross-examination that the "hit/skip" approach was a guise intended to help elicit information from plaintiff and to ensure the officers' safety. *See U.S. v. King*, Case No. 1:09CR368, Doc. 24 at 5 (N.D. Ohio November 4, 2009) (J. Economus).

2

license, went to speak with Guzik and Ciresi, and returned to his vehicle to run an informational search regarding King. King also asserts that Officer Leanza was present and participated with Romanello in the stop of his vehicle. (Compl. ¶ 19.)

King alleges that, at this point, he felt scared "based on the long history of Lakewood Police Department discrimination and the high rate of black male arrests." (Compl. ¶ 17.) He believed the "hit/skip" justification for stopping him was fabricated and that defendants were giving him false reasons for the stop for the purpose of bringing him to physical harm. (Compl. ¶ 17.) He states that he panicked and fled the scene of the traffic stop. (Compl. ¶ 18).

A high-speed chase ensued, which ended when King's vehicle collided with another car. During the pursuit, King caused several automobile accidents and committed multiple traffic violations, including failure to stop for traffic devices and/or stop signs, excessive speed (in excess of 80 miles per hour), and crossing the center line.[4] When Romanello arrived at the scene of the collision, he saw King exit the passenger side of the Cadillac and flee on foot. Romanello pursued plaintiff, and King was quickly apprehended and placed under arrest for felony fleeing. Shortly thereafter, Detectives Guzik and Miller arrived at the scene. A search of plaintiff's person revealed individually wrapped rocks of crack cocaine, a cell phone, and approximately $250.00 in cash. Guzik returned to the Cadillac and found a brown paper bag on the ground below the open passenger side door. This bag contained 139 unit doses of heroin. Inside the vehicle, Guzik observed a .380 semiautomatic Baretta pistol. The officer seized all of this evidence.

---

[4] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the plea agreement filed in plaintiff's criminal case, *United States v. Dennis King,* No. 1:09CR368 (Doc. 42) (N.D. Ohio March 15, 2010), and the statement of facts contained therein. *See, Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999) ("Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

The officers then took King to the Lakewood Police Station where he was subject to a search of his person. At that time, King alleges that he had "surgical ties" on or near his buttocks due to cyst surgery he had two months previously. An unknown Lakewood Police Officer asked if he could search the surgical ties for contraband, but King refused. The officer then indicated that he would seek authorization from Lieutenant Ciresi to have King transported to a hospital where a nurse could conduct the search. King asserts that he asked the officer whether the hospital could also check for injuries associated with the collision, but that the officer threatened to hurt him if he brought any additional injuries to the hospital's attention. (Compl. at ¶¶ 20-24).

In August 2009, King was indicted on federal charges stemming from the stop of his vehicle and subsequent flight. *See United States v. King*, Case No. 1:09CR368 (N.D. Ohio). King pled not guilty, and later filed a motion to suppress the evidence seized by the police in the search of his person and vehicle subsequent to his arrest. In October 2009, the Court held a hearing on King's motion to suppress. In an order dated November 4, 2009, Judge Peter B. Economus[5] concluded that the initial stop of King's vehicle was illegal under the Fourth Amendment, but that plaintiff's "intervening act of free will" in fleeing the scene was sufficient to purge the taint of the illegal stop. *United States v. King*, Case No. 1:09CR368, Doc. 24 at 11-12 (N.D. Ohio November 4, 2009). Accordingly, Judge Economus found that the evidence collected post-flight need not be suppressed based on the illegality of the initial traffic stop, and denied King's motion to suppress. *Id*. at 11-15. Thereafter, King entered a plea of guilty pursuant to a plea agreement. On June 11, 2010, the court sentenced King to a term of 120 months

---

[5] Plaintiff's federal criminal case was initially assigned to Judge Peter Economus. After plaintiff was sentenced, the case was transferred to Judge Patricia Gaughan for administrative reasons.

4

imprisonment to be followed by eight years of supervised release. On June 14, 2010, the court entered its judgment of conviction.

King appealed to the Sixth Circuit, arguing (among other things) that the district court erred in denying his motion to suppress. King's appeal is still pending. According to the docket in this case, he is currently incarcerated at the United States Penitentiary-Hazelton in West Virginia.

On July 28, 2011, King filed the instant suit, alleging (1) violations of his Fourth Amendment rights based on the investigatory stop of his vehicle; (2) violations of his Due Process and Equal Protection rights on the grounds that the traffic stop at issue was based on his race; (3) conspiracy pursuant to § 1985 based on defendants' fabrication of a false probable cause to stop his vehicle; (4) deliberate indifference to his serious medical needs in violation of the Eighth Amendment relating to the search of his surgical ties and subsequent lack of appropriate medical care; and (5) negligence under Ohio law. He asserts claims against the City of Lakewood and the individual defendants in their individual and official capacities.

## II.   STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[6] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.*

---

[6] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking § 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

*City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S. Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III.    LAW AND ANALYSIS

#### A.  Section 1983 Claims Related to Initial Traffic Stop

To prevail on his § 1983 claims, [7] King must establish that (1) he was deprived of a right secured by the Constitution or the laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cnty. Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).

---

[7] Although King is currently a federal prisoner, his claims are against municipal police officers acting under color of state law. Therefore, King's action is properly considered under § 1983, as opposed to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), which provides federal inmates and detainees with a cause of action analogous to § 1983 as to those acting under color of federal law.

*1. Fourth Amendment Claim*

King alleges defendant officers violated his Fourth Amendment rights when they conducted an investigatory stop of his vehicle without probable cause. The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" performed by the government. U.S. CONST. AMEND. IV. This protection extends to investigatory stops of vehicles. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). An investigatory stop complies with the Fourth Amendment if the officer has reasonable suspicion to believe criminal activity "may be afoot." *United States v. Arvizu*, 534 U.S. 266, 173 (2002). A court makes a reasonable suspicion determination by looking at the totality of the circumstances of each case to see whether the officer had a particularized and objective basis for suspecting legal wrongdoing. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981).

In *Heck v. Humphrey*, 512 U.S. 477, 486 (1994), however, the Supreme Court held that a prisoner may not raise claims in a § 1983 action if a judgment on the merits of those claims would affect the validity of his conviction and sentence, unless the conviction and sentence had been set aside. [8] Thus, when a prisoner seeks damages in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction and sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction and sentence has already been invalidated." *Id.* at 487. If the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, "the action

---

[8] Although *Heck* dealt with a § 1983 action filed in federal court by a state prisoner, the Sixth Circuit has held that *Heck* applies to federal prisoners. *See Robinson v. Jones*, 142 F.3d 905, 907 (6th Cir. 1998) (finding that "*Heck* holding applies equally to an action brought under *Bivens*"). Although the instant case is not a *Bivens* action, the same analysis makes *Heck* applicable to a § 1983 case filed by a federal prisoner. *Kelley v. Ritter*, No. 1:08-CV-231, 2009 WL 3065146, at *5, n. 5 (E.D. Tenn. Sept. 21, 2009).

7

should be allowed to proceed in the absence of some other bar to the suit." *Id*.

As an example of a § 1983 action that might be allowed to proceed under certain circumstances, the Supreme Court observed in a footnote that there might be circumstances in which a § 1983 plaintiff could bring an action for damages resulting from an alleged Fourth Amendment violation based on unreasonable search or seizure without first having his or her conviction set aside. *Id*. at 487 n. 7. The court noted that, due to doctrines such as harmless error and inevitable discovery, a determination that a search was unlawful would not necessarily always imply the invalidity of the conviction. *Id*. The court also stated, however, that to recover in such an action, the plaintiff must show an actual compensable injury, and the injury must be distinct of being convicted and imprisoned. *Id.* In summary,

> a § 1983 plaintiff, such as [King] who seeks to recover damages resulting from an illegal search or seizure without overturning the related conviction, must meet two criteria[:] [(1)] […] success on the § 1983 claim must not necessarily imply the invalidity of the conviction[;] [and] [(2)] […] [he] must allege a compensable injury other than the conviction or imprisonment which has not been overturned.

*Braxton v. Scott*, 905 F. Supp. 455, 458 (N.D. Ohio 1995).

At this time, King's conviction stemming from the incidents underlying this suit has not been overturned or otherwise set aside. Under the unique circumstances of this case, however, the Court finds that King's Fourth Amendment claim regarding the investigatory stop of his vehicle would not "necessarily imply the invalidity of his conviction and sentence" under *Heck, supra*. As set forth above, in ruling on the motion to suppress in King's federal criminal case, Judge Economus expressly concluded that the initial traffic stop of King's vehicle was not supported by a reasonable suspicion of criminal activity and, thus, was "illegal under the Fourth Amendment." *United States v. King*, Case No. 1:09CR368, Doc. 24 at 11 (N.D. Ohio Nov. 4, 2009) (J. Economus). Judge Economus went on to find, however, that King's flight could not

"be said to have resulted from an exploitation of the illegality of the initial traffic stop, but was instead an intervening act of free will that is sufficient to purge the taint of the illegal stop." *Id*. at pp. 11-12 citing *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). Judge Economus concluded that "the evidence collected post-flight need not be suppressed based upon the illegality of the initial traffic stop, so long as there was a legitimate basis for its seizure following the capture and arrest of [King] subsequent to his flight." *Id*. at 12. Considering the circumstances surrounding the seizure of the drugs and weapon, the court concluded that none of the evidence needed to be suppressed.[9] *Id.* at 12-15.  Accordingly, in the instant case, even if King were to succeed on his claim that the investigatory stop of his vehicle violated the Fourth Amendment, such a finding would not necessarily imply the invalidity of his conviction and sentence, which was based on his arrest and the search incident thereto following his flight from the initial traffic stop.

Nevertheless, King's illegal seizure claim is subject to dismissal for lack of a cognizable constitutional injury. To establish § 1983 liability, King must prove that a constitutional violation "proximately caused his injury." *Cameron v. City of Pontiac,* 813 F.2d 781, 784 (6th Cir. 1987). "The Supreme Court has stated that '§ 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' " *Powers v. Hamilton Cnty. Public Defender Com'n*, 501 F.3d 592, 609 (quoting *Malley v. Briggs*, 475 U.S. 335, 345(1986)) (citation and internal quotations omitted). "Relying on this language, courts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the §

---

[9] Specifically, the court concluded that the evidence on King's person was found during a search incident to a lawful arrest supported by probable cause; that the heroin found in the brown paper bag on the ground outside of King's car subsequent to the pursuit was abandoned property; and that the firearm in King's car was discovered in plain view. *United States v. King*, Case No. 1:09CR368, Doc. 24 at 12-14.

1983 plaintiff as a result of the defendant's conduct." *Id.*

The only injury King claims in relation to the alleged illegal stop is that the officers' "false/manufactured statement cause[d] [him] to crush *sic* his vehicle and receive[] several injuries." (Compl. ¶¶ 18, 29.) Under the circumstances, however, King's flight from a routine traffic stop—albeit one based on illegal premises—and his subsequent injuries were not reasonably foreseeable and not proximately caused by the officers' actions. King claims that he feared physical harm, or even death, at the hands of the officers because he believed they were lying to him about the hit/skip investigation and because he observed them whispering among themselves. King, however, has not claimed that the officers actually threatened him with any physical harm, overtly or otherwise. Further, King was in his own vehicle parked on a busy public thoroughfare and was in no real or apparent danger when he chose to flee from the officers. Consequently, the Court concludes, as a matter of law, that the defendant officers did not proximately cause King's injuries, rather, his choice to flee from the officers caused his injuries. *See Cameron*, 813 F.2d at 786 (holding that officers' use of firearms in attempted apprehension of fleeing felon was not, as a matter of law, the proximate cause of suspect's death where it was not reasonably foreseeable that he would choose to run onto a high speed freeway to evade the officers).[10]

---

[10] Nor can plaintiff establish that the officers' pursuit of him caused a deprivation of his Fourth Amendment rights because he was not "seized" when he decided to flee rather than stop for the pursuing officers. *California v. Hodari D.,* 499 U.S. 621 (1991) (holding that boy was not seized while fleeing from pursuing police officer until officer tackled him, bringing boy under physical control); *Galas v. McKee,* 801 F.2d 200, 202 (6th Cir. 1986) ("Clearly, during the initial stages of the pursuit when the minor plaintiff decided to flee rather than to obey the defendant officer's directive to stop, the minor plaintiff was not restrained."). "Further, a high-speed pursuit by police officers is not an unreasonable method of seizing traffic offenders because there is only a minimal intrusion and show of force." *Spears v. City of Louisville*, 27 F.3d 567 (Table), 1994 WL 262054, at *2 (6th Cir. 1994) citing *Jones v. Sherrill,* 827 F.2d 1102, 1104 (6th Cir. 1987) (high-speed pursuit of a traffic offender that terminates in an accident does not constitute a seizure of the offender because no physical force or show of authority on the part of the officer caused the restraint on the offender's liberty); *Cameron v. City of Pontiac, Mich.,* 813 F.2d 782, 785-86 (6th Cir. 1987) (pursuit of fleeing burglary suspect resulting in suspect's death when he tried to cross a busy expressway

   2. *Fourteenth Amendment Equal Protection Claim*

Next, King alleges that the defendant officers violated his right to equal protection under the law guaranteed by the Fourteenth Amendment when they stopped and detained his vehicle because "he is a black male riding in a new vehicle, and wearing new clothes." (Compl. ¶ 14.) King asserts that defendants admitted that, at that time, King had not violated any traffic laws, and that defendants never charged him with "violating/committing any criminal law or any traffic law before they caused him to panic and crush his vehicle." (Compl. ¶¶ 15, 25.) Further, he claims that the "Lakewood Ohio Police Department, and or its officers/ detectives have a long history of discrimination against black males." (Compl. ¶ 14.) Moreover, he alleges that the police department arrests more black males than any other race within Lakewood and the employment of blacks within the police department is less than 1%. (Compl. ¶ 14.)

"Selective prosecution" claims may be established under the Equal Protection Clause of the Fourteenth Amendment, which protects citizens from discriminatory police action that is based on an impermissible factor, such as race, religion, or gender. *Oyler v. Boles*, 368 U.S. 448, 456 (1962); *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005); *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997). King's racial profiling claim, however, fails for the same reason as his Fourth Amendment claim, discussed *supra*. Pursuant to the *Heck*, in order to receive compensatory damages under § 1983 for this claim, King would have to prove that he was racially profiled, and he "must allege a compensable injury other than the conviction or imprisonment which has not been overturned." *Braxton v. Scott*, 905 F. Supp. at 458. Again, King has not plead a compensable injury because the officers' actions, as a matter of law, were

---

neither a seizure nor the proximate cause of his death).

not the proximate cause of his vehicular crash and his subsequent injuries.

   3. *Fourteenth Amendment Due Process Claim*

King also claims that the defendant officers violated his Due Process rights by illegally stopping his car and detaining him based on his race. The Fifth Amendment provides that "no person shall be deprived of life, liberty or property, without due process of law." U.S. CONST. AMEND. V. The Due Process Clause has a procedural component and a substantive one. It appears from the Complaint that King is alleging a violation of his substantive due process rights. Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937) *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969). Due process claims of this nature involve official acts that cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).

In the instant case, plaintiff's substantive due process claim appears to be based on the allegation that defendants' allegedly racially motivated investigatory stop of his vehicle "shocks the conscience." This claim is based on the same facts as his Equal Protection claim, discussed above. Where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

12

*See Graham v. Connor*, 490 U.S. 386, 395 (1989). This Court has already considered plaintiff's claim in the context of his Fourteenth Amendment Equal Protection rights, *infra*. Therefore, his substantive due process claim is dismissed as duplicative of his Equal Protection claim.

### B. Section 1985 Conspiracy Claim

King also alleges that defendants conspired to deprive him of his constitutional rights by "design[ing] a premeditated plan to set up a false probable cause stop" of his vehicle. King asserts this claim under 42 U.S.C. § 1985. To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to § 1985, a plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)). A proper claim under § 1985(3) alleges conspiracy to violate federal rights for "reasons of racial, or perhaps some other class-based, animus," and causation, i.e. the plaintiff was injured or deprived a right by an act undertaken in furtherance of the conspiracy. *Scott,* 463 U.S. at 834-36; *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-69 (1993); *Bartell v. Lohiser,* 215 F.3d 550, 559-60 (6th Cir. 2000).

King has alleged that he is black, which is a protected class under § 1985. King further alleges, and there is evidence in his underlying criminal case to suggest, that defendants Guzik, Ciresi, Miller, Kappa, Romanello and Leanza conspired to pull his vehicle over on false pretenses in order to facilitate questioning of him. King further asserts that he saw defendants

13

whispering among themselves during the investigatory stop, which he argues is further evidence of a conspiracy. (Compl. ¶ 19.) Under a very liberal reading of the complaint, these vague, conclusory allegations may be construed to allege a conspiracy under § 1985;[11] however, King has wholly failed to demonstrate a class-based, "invidiously discriminatory motivation" behind the conspirator's actions. *Bray*, 506 U.S. at 267-69. King cannot prevail because he has not pleaded that the "conspiracy" was motivated by a desire to discriminate against him because he is African American. He makes only conclusory allegations that defendants acted in concert and has failed to present any factual allegations suggesting the existence of an actual agreement between two or more persons to discriminate against African Americans.

### D.     Failure to Provide Proper Medical Care

Next, King alleges his Eighth and Fourteenth Amendment rights were violated when he was denied proper medical treatment after his arrest. Specifically, he maintains the search of his surgical ties for contraband caused the site to become infected, necessitating three trips for medical care since his arrest. He claims he is in constant pain and that his surgery has not healed properly. In addition, King claims he was denied medical treatment for injuries caused during the car accident that occurred while he was fleeing from defendants. (Compl. ¶¶ 20-24).

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to prisoners' serious medical needs. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Eighth Amendment, however, does not apply to pretrial detainees, such as plaintiff herein. *Watkins v. City of Battle Creek*, 273 F.3d

---

[11] Civil rights conspiracies are subject to a heightened pleading standard. *See Farhat v. Jopke,* 370 F.3d 580, 599 (6th Cir. 2004) ("Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim.") (citation omitted).

682, 685 (6th Cir. 2001). The Fourteenth Amendment, rather, "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). Thus, although the Eighth Amendment is not directly applicable to plaintiff herein, its deliberate indifference standard is to be applied under the Fourteenth Amendment. *Id.*

A claim of deliberate indifference has both an objective and subjective component. *Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008). The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious" and poses "a substantial risk of serious harm." *Id*. To satisfy the subjective component, an inmate must demonstrate that prison officials had "a sufficiently culpable state of mind," *i.e.* the official knew of and disregarded an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Court concludes that King has failed to state a claim for deliberate indifference to his medical needs as to any of the named defendants. King claims that, when he was transported to the Lakewood Police Station after his arrest, "an unknown officer" asked plaintiff if he could touch plaintiff's surgical ties with his gloves in order to search for contraband. (Compl. ¶ 20). When King refused, this unknown officer indicated that he would seek authorization from Lieutenant Ciresi to have him taken to a hospital so that a nurse could search his surgical ties. (Compl. ¶ 20). King also asserts that this unknown officer threatened to harm him if he attempted to report any other medical problems arising from the car accident to the attention of medical personnel. (Compl. ¶ 22). King claims that because of the "illegal tampering" with his surgical ties, the area surrounding his surgery became infected and continues

15

to cause him pain. He further asserts that he was denied medical treatment for other injuries stemming from his post-flight car accident, but does not specify or describe those injuries.

Even giving plaintiff's *pro se* complaint a liberal construction, it does not appear defendants Guzik, Miller, Kappa, Romanello or Leanza had any involvement in the circumstances surrounding the searching of King's surgical ties or the alleged failure to provide medical treatment for his unspecified injuries arising from his post-flight car accident. While defendant Ciresi allegedly was contacted for authorization to transport King to a hospital, there are no allegations suggesting that Ciresi was "deliberately indifferent" to King's medical needs under the standard set forth above. Accordingly, the Court finds that King's Fourteenth Amendment claim of deliberate indifference to his medical needs is subject to summary dismissal as to all defendants pursuant to § 1915(e).

### E. Municipal Liability

To the extent King's complaint could be construed as asserting a claim against the City of Lakewood, that claim would also lack merit. As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by" that body's officers. *Id.* at 690; *DePiero v. City of Macedonia,* 180 F.3d 770, 786 (6th Cir. 1999).

Plaintiff must "identify the policy, connect the policy to the [City] itself and show that the particular injury was incurred because of the execution of that policy." *Graham v. Cnty. of Washtenaw,* 358 F.3d 377, 383 (6th Cir. 2004) (citation and internal quotation omitted). The complaint does not identify a particular policy, or set forth any allegations that the alleged deprivation of King's constitutional rights was the result of a policy or custom of the City of Lakewood.

### F.  State Law Negligence Claim

King also alleges a state law claim for negligence against all defendants. Under Ohio law, "in order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 423 N.E.2d 467 (Ohio 1981). As outlined above, plaintiff cannot establish, as a matter of law, that defendants proximately cause his injuries. Accordingly, the Court concludes that King's state law negligence claim lacks an arguable basis in law and is premised on an indisputably meritless legal theory. *Neitzke*, 490 U.S. at 327.

## IV.  CONCLUSION

For all the foregoing reasons, all of plaintiff's claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e). Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[12]

**IT IS SO ORDERED**.

Dated: February 3, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[12] 28 U.S.C. § 1915(a)(3) provides, in pertinent part, "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

17